**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 20-14334-CV-MIDDLEBROOKS

JONATHAN RUIZ,

    Plaintiff,

v.

OFFICER FLETCHER,

    Defendant.

_____/

**ORDER ON MOTION FOR SUMMARY JUDGMENT
FILED BY DEFENDANT OFFICER FLETCHER**

**THIS CAUSE** is before the Court on the Motion for Summary Judgment ("Motion") filed by Defendant Officer Fletcher ("Defendant"). (DE 49). Defendant argues he is entitled to judgment as a matter of law because Plaintiff has not demonstrated that Defendant violated his Eighth Amendment rights by failing to keep Plaintiff safe from harm. (*Id.* at 2-15). Defendant also argues he is entitled to qualified immunity because he was acting within his discretionary authority and did not violate any constitutional right of the Plaintiff. (*Id.* at 15-18). Plaintiff disagrees, claiming that genuine issues of material fact remain and that summary judgment must be denied and the case proceed to trial. (DE 58).

I have considered the First Amended Complaint (DE 14), Defendant's Motion (DE 49) with supporting Statement of Material Facts and Exhibits (DE 48), Plaintiff's Memorandum of Law in Opposition (DE 58) with supporting Declaration (DE 59), and Statement of Disputed

- 1 -

Factual Issues (DE 60), Defendant's Reply (DE 65), together with pertinent parts of the record. For the reasons discussed below, Defendant's Motion for Summary Judgment is **DENIED.**

## I. BACKGROUND

Plaintiff Jonathan Ruiz ("Plaintiff"), a Florida Department of Corrections ("FDOC") inmate, commenced this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, alleging that while he was confined at the Martin Correctional Institution ("Martin CI"), the Defendant violated his Eighth Amendment rights by failing to protect him from being attacked on October 29, 2016 by a known rival gang member, who stabbed Plaintiff four times with a shank. (DE 14).

## II. APPLICABLE LEGAL PRINCIPLES

A. <u>Civil Rights Standard of Review</u>

To state a claim under 42 U.S.C. § 1983, Plaintiff must allege: (1) the Defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. *Richardson v. Johnson,* 261 F.3d 1275, 1288 (11th Cir. 2001) (per curiam) (first citing *U.S. Steel, LLC v. Tieco, Inc.,* 261 F.3d 1275, 1288 (11th Cir. 2001) and then *Arrington v. Cobb Cnty.,* 139 F.3d 865, 872 (11th Cir. 1998)).

B. <u>Standard of Review Governing Motion for Summary Judgment</u>

A motion for summary judgment looks to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Under Fed. R. Civ. P. 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Grayson v. Warden, Comm'r, Ala. Dep't of Corr.*, 869 F.3d 1204, 1220 (11th Cir. 2017) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)). "'The movant has the burden of showing that there are no genuine issues of fact.'" *Id.* at 1220

(quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986)). Issues are genuine if there is sufficient evidence for a reasonable jury to return a verdict for either party. *Great Am. All. Ins. Co. v. Anderson,* 847 F.3d 1327, 1331 (11th Cir. 2017) (relying on *Anderson,* 477 U.S. at 248). In a similar vein, "an issue is material if it may affect the outcome of the suit under governing law." *Great Am.,* 847 F.3d at 1331 (relying on *Anderson,* 477 U.S. at 248). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson,* 477 U.S. at 242). Thus, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, courts should deny summary judgment." *Penley v. Eslinger,* 605 F.3d 843, 848 (11th Cir. 2010).

In reviewing a motion for summary judgment, district courts must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Furcron v. Mail Ctrs. Plus, LLC,* 843 F.3d 1295, 1304 (11th Cir. 2016) (quoting *FindWhat Inv. Grp. v. FindWhat.com,* 658 F.3d 1282, 1307 (11th Cir. 2011)). District courts "'may not weigh conflicting evidence or make credibility determinations'" when reviewing a motion for summary judgment. *See Grayson,* 869 F.3d at 1220 (quoting *Jones v. UPS Ground Freight,* 683 F.3d 1283, 1292 (11th Cir. 2012) (citing *FindWhat,* 658 F.3d at 1307)). Thus, where the facts specifically averred by the non-moving party contradict facts specifically averred by the movant, the motion must be denied, assuming those facts involve a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380 (2007).

The moving party necessarily carries the burden of proof. *Great Am.,* 847 F.3d at 1331. In meeting that burden, non-moving parties may rely on materials enumerated in Fed. R. Civ. P. 56(c), meaning there are some materials that may be relied upon to avoid summary judgment even though they would not be admissible at trial. *Owen v. Wille,* 117 F.3d 1235, 1236 (11th Cir. 1997) (quoting *Celotex,* 477 U.S. at 324). District courts must also consider any "specific facts" pled in Plaintiff's sworn complaint in opposition to summary judgment. *See* Fed. R. Civ. P. 56(e); *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (first citing *Perry v. Thompson,* 786 F.2d 1093, 1095 (11th Cir. 1986) (per curiam) ("Plaintiff alleged specific facts in his sworn complaint and they were required to be considered in their sworn form."); and then citing *Sammons v. Taylor,* 967 F.2d 1533, 1544 n.5 (11th Cir. 1992) ("[F]acts alleged in an inmate's sworn pleading are sufficient and . . . a separate affidavit is not necessary.")).

### III.  SUMMARY OF MATERIAL FACTS

A.  <u>Events Leading Up to the Stabbing</u>

Plaintiff, a convicted felon, was confined at Martin CI from December 3, 2014 through November 9, 2016. (DE 48 at 1, ¶ 1; DE 60 at 1, ¶ 1). Prior to October 19, 2016, there were no interactions between Plaintiff and Defendant. (*Id.* at 2, ¶ 4; *Id.* at 1, ¶ 4). Sometime between October 19, 2016 and October 24, 2016, Plaintiff claims he was threatened by Defendant, but is unable to provide a specific date or even the general time of day this interaction allegedly occurred. (*Id.* at 2, ¶ 5; *Id.* at 1, ¶ 5). At the time that Defendant threatened him, Plaintiff claims the Defendant also "engaged in a vitriolic conversation" with him. (DE 60 at 1-2, ¶ 6). Plaintiff alleges that the conversation ended with Defendant stating he would have Plaintiff killed and then place a tattoo on his body with Plaintiff's inmate identification number. (DE 59 at 2, ¶ 5). Defendant denies ever threatening Plaintiff and denies engaging "in a vitriolic conversation" with him. (DE 48 at 2, ¶ 6; DE 48-18). After the above-described encounter, Plaintiff concedes he did

not receive any other threats from Defendant. (*Id.* at 2, ¶ 8; DE 60 at 2, ¶ 8). Plaintiff admits he did not file any inmate grievances or appeals at any point prior to the October 29, 2016 stabbing regarding any threats made by Defendant between October 19, 2016 and October 24, 2016. (*Id.* at 2, ¶ 9; *Id.* at 2, ¶ 9).

B.  The October 29, 2016 Stabbing

On October 29, 2016, Plaintiff decided to attend outdoor recreation. (*Id.* at 3, ¶ 13; *Id.* at 2, ¶ 13). In the outdoor recreation area, there are only "four or five recreation cages," each of which can hold only one to two inmates. (*Id.* at 3, ¶¶ 10, 12; *Id.* at 2, ¶¶ 10, 12). Inmates are required to be "strip searched" before being escorted to the recreation cages in small groups. (*Id.* at 3, ¶ 11; *Id.* at 2, ¶ 11). Once outdoors in the recreation cages, inmates remain there from a half-hour to an hour and are provided water by an attending inmate orderly. (*Id.* at 3, ¶ 10; *Id.* at 2, ¶ 10).

On October 29, 2016, Inmate Michael Bernabeu ("Bernabeu") was without restraints, working as an orderly in the recreation area. (*Id.* at 3, ¶ 14; *Id.* at 2; ¶ 14). Although Officers Brian Babcock ("Babcock") and Angel Martinez ("Martinez") were responsible for strip searching inmates prior to escorting them to the outdoor recreation area, they did not do so that day, and instead patted down the inmates in order to save time. (*Id.* at 4, ¶ 17; *Id.* at 2, ¶ 17). That day, the Defendant was responsible for supervising the inmates in the outdoor recreation area. (*Id.*; *Id.*).

As Babcock and Martinez were escorting Plaintiff out of his recreation cage, Bernabeu rushed past them, attacking Plaintiff with a homemade weapon, and knocking them both to the ground. (*Id.* at 4, ¶ 20; *Id.* at 2, ¶ 20). Babcock and Martinez then removed Bernabeu from atop Plaintiff, subduing him with chemical agents, at which point Bernabeu dropped his weapon. (*Id.* at 4, ¶ 21; *Id.* at 3, ¶ 21). Prior to being stabbed by Bernabeu that day, Plaintiff never had any arguments or conversations with Bernabeu nor did he have any indication that Bernabeu was hostile or posed a threat towards him. (DE 48 at 3, ¶ 16; DE 60 at 2, ¶ 16).

C.    Investigation Following Stabbing

After the stabbing, an Incident Report was prepared by Defendant in which he admits he was supervising the recreation area on October 29, 2016. (DE 48-7, Ex. 5 at 1). Defendant admits that while escorting inmates back to C Dorm, Inmate Bernabeu was unrestrained because he was acting as an orderly at the time. (*Id.*). Defendant further indicated that Bernabeu had previously been used as an orderly without incident. (*Id.*).

However, the Incident Report reveals that Albert Scarpati ("Scarpati"), the shift supervisor, found Defendant did not obtain authorization to remove Inmate Bernabeu from the recreation cage, unrestrained. (DE 48-7, Ex. 5 at 1). Scarpati further found that, as a "direct result of his [Defendant's] actions" Plaintiff was "stabbed by Inmate Bernabeu." (*Id.*). Although Defendant indicated verbally, he had done this on more than one occasion, Scarpati noted that this was "both a violation of the post orders and negligence." (*Id.*). As a result, Scarpati forwarded the incident to Defendant's Chief Correctional Officer for "review/action." (*Id.*).

Defendant alleges Babcock, Martinez, and he were unaware of any threat posed by Bernabeu to Plaintiff. (DE 48 at 5, ¶ 22; DE 48-12 at 2, ¶ 12). Defendant further claims none of them had access to information regarding gang affiliations of Martin CI inmates. (*Id.*; *Id.*). Plaintiff disagrees, claiming the Defendant knew Bernabeu posed a threat to Plaintiff and actively encouraged and permitted the attack. (DE 60 at 3, ¶ 22; DE 59 at 3, ¶ 13). Plaintiff alleges he specifically told Defendant about the threat before the discussion with Defendant turned "vitriolic." (DE 59 at 3, ¶ 7). Plaintiff claims Defendant was aware that prior to the stabbing he had been placed in confinement as a result of a gang related incident during which Plaintiff was attacked and robbed. (DE 48-12 at 4, ¶ 12; DE 48-1 at 18, 63-66). Plaintiff claims Defendant was aware that Bernabeu was a member of the rival gang that previously attacked him. (*Id.*). Plaintiff

also alleges that it was common knowledge at Martin CI that most inmates were gang members or had gang affiliations. (DE 60 at 3, ¶ 23).

D.      Treatment for Injuries

After being stabbed by Bernabeu, Plaintiff was taken to the medical department where he was examined by a nurse who noted that Plaintiff suffered three abrasions, a welt, and three small lacerations with minimal bleeding, which were cleaned and bandaged. (DE 48 at 5, ¶ 24; DE 60 at 3, ¶ 24). On October 31, 2016, Plaintiff refused further medical care for the injuries he sustained on October 29, 2016, choosing to reuse his initial bandages and wash his injuries in his cell. (*Id.* at 5, ¶¶ 25-26; *Id.* at 3, ¶¶ 25-26).

## IV. DISCUSSION

Defendant argues he is entitled to judgment as a matter of law because Plaintiff has not demonstrated that he violated his Eighth Amendment rights by failing to keep Plaintiff safe from harm. (*Id.* at 2-15). Defendant also argues he is entitled to qualified immunity because he was acting within his discretionary authority and did not violate Plaintiff's constitutional rights. (*Id.* at 15-18). Plaintiff disagrees, claiming that genuine issues of material fact remain and that summary judgment must be denied. (DE 58).

A.      Eighth Amendment Claim

1.      *Applicable Law*

The Eighth Amendment governs the conditions under which convicted prisoners are confined and imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates." *See Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (citation omitted). Prison officials have a duty to take reasonable measures to protect prisoners from violent attacks by other inmates. *Id.* at 833-34. This is because "[b]eing violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 834. However,

that does not mean that prison officials are liable for every act of inmate-on-inmate violence. *Id.* at 834.

"A prison official violates the Eighth Amendment 'when a substantial risk of serious harm, *of which the official is subjectively aware,* exists and the official does not respond reasonably to the risk.'" *Caldwell,* 748 F.3d at 1099 (emphasis in original) (citation omitted). To survive summary judgment, Plaintiff must show: "(1) a substantial risk of harm; (2) the defendants' deliberate indifference to that risk; and (3) causation," that the constitutional violation caused his injuries. *Id.* "The first element of deliberate indifference--whether there was a substantial risk of harm--is assessed objectively and requires the plaintiff to show 'conditions that were extreme and posed an unreasonable risk of injury to his future health or safety.'" *Marbury v. Warden,* 936 F.3d 1227, 1233 (11th Cir. 2019) (per curiam). In this context, deliberate indifference requires: (1) the defendant's subjective knowledge of the risk of serious harm; (2) disregard of that risk; and (3) conduct that amounts to more than mere negligence. *Richardson v. Johnson,* 598 F.3d 734, 737 (11th Cir. 2010) (per curiam). A prison official has subjective knowledge of a risk of serious harm only if he had knowledge of specific facts from which an inference of the risk could be drawn, and he actually drew that inference. *Carter v. Galloway,* 352 F.3d 1346, 1349 (11th Cir. 2003) (per curiam). "Whether a particular defendant has subjective knowledge of the risk of serious harm is a question of fact 'subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Goebert v. Lee Cnty.,* 510 F.3d 1312, 1327 (11th Cir. 2007) (quoting *Farmer,* 511 U.S. at 842).

    2.    *Analysis*

        (a)    <u>Substantial Risk of Harm</u>

I first address whether on this record, there exists a genuine issue of material fact as to the

first element of deliberate indifference--whether there was a substantial risk of serious harm--which is assessed objectively and requires Plaintiff to show "conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety."

Viewing the allegations in the light most favorable to the Plaintiff, as the non-moving party, Plaintiff alleges he had previously been attacked by members of a rival gang, of which Bernabeu was a member, and that these gang members continued to threaten him. Plaintiff claims it was common knowledge at Martin CI that most inmates belonged to a gang or had gang affiliations. He further alleges he told Defendant he feared another rival gang attack prior to the October 29, 2016 stabbing incident complained of here. Finally, Plaintiff alleges Defendant knowingly kept Bernabeu unrestrained, encouraging and permitting him to attack Plaintiff. The facts also demonstrate that Defendant violated post orders by negligently removing Bernabeu from the recreation cage unrestrained when he did not have authorization to do so. On these facts, a jury could conclude that the risk of an attack by an unrestrained inmate, who was allegedly a member of a rival gang, was substantial. Although Defendant asserts he was unaware that Bernabeu belonged to a rival gang or that he was a threat to Plaintiff, I must view the facts and draw inferences in Plaintiff's favor. Plaintiff argues that Defendant, as a corrections officer at Martin CI, would have known that inmates belong to gangs, as such knowledge was common, and that Defendant was otherwise aware that Bernabeu belonged to a rival gang that had previously harmed Plaintiff. Thus, I find Plaintiff has alleged facts that, if true, demonstrate he faced a substantial risk of serious harm. *See e.g., Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga.,* 400 F.3d 1313, 1320 (11th Cir. 2005) (finding an excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm).

    (b)    <u>Deliberate Indifference</u>

The second element--whether the Defendant was deliberately indifferent to that risk--has

both a subjective and an objective component. To satisfy the subjective component, a plaintiff must allege facts that would allow a jury to conclude that the defendant actually knew that the plaintiff faced a substantial risk of serious harm. *Caldwell,* 748 F.3d at 1090. To satisfy the objective component, a plaintiff must allege facts showing that the defendant disregarded that known risk by failing to respond to it in an objectively reasonable manner. *See id.*

(1) *Subjective Component.* Plaintiff alleged that he verbally informed Defendant prior to the incident complained of that he had been in confinement because a rival gang member had robbed and attacked him. Plaintiff further alleges he told Defendant that Bernabeu was a member of that rival gang. Plaintiff claims Defendant told him that he was going to have him killed and then his FDOC identification number tattooed on his chest. On these facts, I find a jury could infer that Plaintiff "feared for his life" and had a "well-founded basis for his fear" because he had previously been attacked by Bernabeu's gang, and that Defendant was aware of this. *See Caldwell,* 748 F.3d at 1101. Thus, Plaintiff has adequately alleged that Defendant was subjectively aware of a substantial risk of serious harm to Plaintiff.

(2) *Objective Component.* The second prong of the deliberate indifferent element requires Plaintiff to demonstrate that the officer responded in an objectively unreasonable manner to the substantial risk of serious harm. *See Rodriguez v. Sec'y for Dep't of Corr.,* 508 F.3d 611, 620 (11th Cir. 2007). "An official responds to a known risk in an objectively unreasonable manner if he knew of ways to reduce the harm but knowingly [or] recklessly declined to act." *Id.* (quotation marks and citation omitted); *accord LaMarca v. Turner,* 995 F.2d 1526, 1538 (11th Cir. 1993) (explaining that the proper inquiry is whether a prison official "knowingly or recklessly disregarded solutions within his means"). The facts, viewed in the light most favorable to Plaintiff, reveal that Defendant had knowledge of post orders and removed inmate Bernabeu from the recreation cage unrestrained when he did not have authorization to do so. Even if Defendant was

unaware of Bernabeu's gang affiliation, he knowingly violated post orders by allowing Bernabeu go unrestrained as he exited the recreation cage. Defendant could have protected Plaintiff from the attack by ensuring that Bernabeu was restrained as he exited the recreation cage. Plaintiff alleges the Defendant allowed Bernabeu to remain unrestrained because he wanted Plaintiff killed and encouraged and facilitated Bernabeu's attack. It is well settled that "a prison official [cannot] escape liability for deliberate indifference by showing that . . . he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault," as long as the official was otherwise aware that the victim faced a substantial risk of serious harm. *Rodriguez,* 508 F.2d at 619 (citation omitted). Defendant was aware that Plaintiff was at risk of severe harm from rival gang members. Plaintiff alleges that Defendant orchestrated and facilitated the stabbing by Bernabeu, by allowing him to remain unrestrained as he left the recreation area. On these facts, a jury could conclude that Defendant did not respond reasonably to the substantial risk of harm Plaintiff faced. *See Hale v. Tallapoosa Cnty.,* 50 F.3d 1579, 1584 (11th Cir. 1995) ("A jury could find that despite any efforts [the sheriff] made . . ., [he] was deliberately indifferent by disregarding 'alternative means' or interim measures for reducing the risk of violence such as those advanced by Hale." (quoting *LaMarca,* 995 F.2d at 1536). Thus, I find that a material issue of facts exists as to whether Defendant "knew of ways to reduce the harm but knowingly [or] recklessly declined to act." *Rodriguez,* 508 F.3d at 620 (quotation marks and citation omitted).

        (3)    *Causation.* Finally, I must consider whether the Defendant caused Plaintiff's Eighth Amendment violation. To do so, I must determine whether Defendant "was "'in a position to take steps that could have averted the stabbing incident . . . but, through [deliberate] indifference, failed to do so." *Rodriguez,* 508 F.2d at 622 (citing *Williams v. Bennett,* 689 F.2d 1370, 1384 (11th Cir. 1982). Whether Plaintiff's injuries were caused by Defendant requires

looking at Defendant's "'duties, discretion and means.'" *Id.* (quoting *Williams,* 689 F.2d at 1384). The Eleventh Circuit has held that Plaintiff can demonstrate the "necessary causal link" by showing the prison official "(1) 'had the means to improve' the inmate's safety, (2) 'knew that the actions he undertook would be insufficient to provide [the inmate] with reasonable protection from violence,' and (3) had 'other means [ ] available to him which he nevertheless disregarded.'" *Id.* (quoting *LaMarca,* 995 F.2d at 1539).

Defendant argues that there were "multiple factors" which contributed to the "arguably dangerous conditions that form the basis" of Plaintiff's complaint and which caused his injury. (DE 49 at 14). Defendant contends that Plaintiff's injuries were as a direct result of Bernabeu having secreted a homemade weapon on his person which was not discovered by the officers who did not perform a full strip search prior to his entry into the recreation area. (*Id.*). Defendant claims that he could not reasonably foresee that his action in allowing Bernabeu to work unrestrained would have resulted in Bernabeu using a secreted weapon to cause Plaintiff harm. (*Id.* at 15). Defendant maintains that the other officers' failure to adequately search Bernabeu prior to allowing him into the recreation was an intervening cause of the Plaintiff's injuries. (*Id.*). Defendant concludes his actions in allowing Bernabeu to move around without restraints did not proximately cause Plaintiff's injuries. (*Id.*). Plaintiff disagrees. (DE 58 at 6). Plaintiff alleges Defendant had the means to improve Plaintiff's safety by ensuring that Bernabeu was in restraints as he left the recreation area. (*Id.*). Plaintiff contends that Defendant threatened to cause him serious harm and then used Bernabeu, an orderly he had used in the past, to facilitate and carry out the attack on the Plaintiff. (DE 58 at 6). Plaintiff alleges Defendant knew his actions of allowing Bernabeu to leave the recreation cage unrestrained would cause Plaintiff harm. (*Id.*). Plaintiff further maintains that it was Defendant's sole responsibility for selecting, searching, and supervising Bernabeu's work as an orderly. (*Id.* at 8). Thus, when viewing the facts in the light

most favorable to Plaintiff, I find a jury could find the "necessary causal link" between Defendant's actions and Plaintiff's injuries.

Given all of the foregoing, I find there remain genuine issues of fact upon which a jury could concluded that Defendant violated Plaintiff's Eighth Amendment rights so that Defendant is not entitled to summary judgment as a matter of law.

B.   Qualified Immunity

Next, Defendant argues that he is entitled to qualified immunity. (DE 48 at 15-29).

1.   *Applicable Law*

Qualified immunity is designed to balance the need to fully protect constitutional rights while similarly protecting government employees from harassing litigation that can inhibit governmental functions. *See Ziglar v. Abbasi,* 137 S.Ct. 1843, 1866 (2017). The qualified immunity defense shields governmental officials performing discretionary acts "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *see also Johnson v. Boyd,* 701 F. App'x 841, 848 (11th Cir. 2017) (per curiam). To establish he is entitled to qualified immunity, the Defendant must demonstrate that he was acting within the course and scope of his discretionary authority at the time of the alleged constitutional violation. *See Paez v. Mulvey,* 915 F.3d 1276, 1284 (11th Cir. 2019).

Once Defendant makes this showing, the burden shifts to the Plaintiff to establish that qualified immunity is not appropriate because: (1) a constitutional right was violated by the officers; and (2) the right was clearly established at the time of the violation. *Ashcroft v. al-Kidd,* 563 U.S. 731, 735 (2011); *Roberts v. Spielman,* 643 F.3d 899, 904 (11th Cir. 2011) (per curiam). If a constitutional right would have been violated under Plaintiff's version of the facts, I must then proceed to "the next, sequential step" and determine "whether the right was clearly established."

*See Lee v. Ferrero,* 284 F.3d 1188, 1194 (11th Cir. 2002). The constitutional right must be sufficiently clear for a reasonable official to understand that what he is doing violates that right. *Hope v. Pelzer,* 536 U.S. 730, 739 (2002); *Vinyard v. Wilson,* 311 F.3d 1340, 1353 (11th Cir. 2002)(citations omitted). Plaintiff can demonstrate that his rights were clearly established in one of three ways: (1) identifying a "materially similar case" decided before the alleged violation; (2) pointing to "a broader, clearly established principle that should control the novel facts of the situation;" or (3) demonstrating that the conduct at issue "so obviously violates the constitution that prior case law is unnecessary." *Terrell v. Smith,* 668 F.3d 1244, 1255 (11th Cir. 2012) (internal citations and quotations omitted).

    2.    *Analysis*

Defendant argues he is entitled to qualified immunity because Plaintiff has not demonstrated Defendant violated Plaintiff's Eighth Amendment rights. (DE 49 at 17). Further, Defendant argues Plaintiff has not identified clearly established precedent involving facts similar to those alleged here. (*Id.*). Plaintiff disagrees, contending that Defendant was not acting within the course and scope of his discretionary authority when he threatened to harm Plaintiff and then facilitated and executed that threat by allowing his "orderly," a known rival gang member, to stab Plaintiff. (DE 58 at 9-11). Plaintiff also relies on *Rodriguez,* 508 F.3d at 612, 615, claiming the facts of that case, decided in 2007, are similar to his and demonstrate his rights were clearly established at the time of the complained of incident. (*Id.* at 16).

    (a)    <u>Step 1 - Defendant Has Not Met His Initial Burden</u>. When viewing the evidence in a light most favorable to Plaintiff, as the non-movant, I find there remains a genuine issue of fact whether the Defendant was acting within the scope of his discretionary authority at the time of the alleged Eighth Amendment violation. The record demonstrates that Defendant violated post orders by removing Bernabeu from the recreation cage unrestrained when he did not have authorization

to do so, thereby orchestrating or otherwise facilitating Plaintiff's assault. Thus, I find Defendant has not met his initial burden of demonstrating that he was acting within the scope of his discretionary authority. Even if I were to find that he was acting within the scope of his discretionary authority, for the reasons discussed below, I find qualified immunity is not appropriate given Plaintiff's version of the facts, which I accept as true.

(b)     Step 2 - Plaintiff's Burden Demonstrates Qualified Immunity is Not Appropriate.

First, when considering and accepting Plaintiff's version of facts as true, I find Defendant violated Plaintiff's Eighth Amendment rights by orchestrating and facilitating Plaintiff's attack when he allowed Bernabeu, another inmate and rival gang member, to leave the recreation cage area unrestrained, knowing this could pose a substantial risk of injury to Plaintiff. I further find the record evidence when viewed in the light most favorable to Plaintiff includes facts which demonstrate that Defendant was aware of the risk and failed to take any measures to keep Plaintiff safe from harm. Therefore, for the reasons previously stated, I find Plaintiff has alleged facts to support an Eighth Amendment claim against Defendant.

Having determined that Plaintiff has alleged facts to support a constitutional violation, I must now determine whether the constitutional right was "clearly established" at the time of the violation. *See Ashcroft,* 563 U.S. at 735; *Roberts,* 643 F.3d at 904. The Supreme Court instructs that "the salient question . . . is whether the state of the law . . . gave [the Defendant] fair warning that [his] alleged treatment of [the plaintiff] was unconstitutional." *Hope v. Pelzer,* 536 U.S. 730, 741 (2002). It is well settled that the Supreme Court's principle in *Farmer v. Brennan*, 511 U.S. 825 (1994)[1] controls Plaintiff's Eighth Amendment claim. In *Farmer,* the Supreme court made clear that inmates have the right to be free from violence at the hands of other inmates with

---

[1] In *Farmer,* the Plaintiff sued various prison officials under § 1983 alleging an Eighth Amendment violation because the officials were deliberately indifferent to his safety. *Farmer,* 536 U.S. at 829.

sufficient clarity to guide a reasonable officer. *See Farmer,* 511 U.S. at 833; *see also Scott v. Miami-Dade County,* 657 F. App'x 877, 885 (11th Cir. 2016)(per curiam). In *Farmer,* the Supreme Court further determined that "an official may be liable if he knows of and disregards a substantial risk of inmate-on-inmate attack 'by failing to take reasonable measures to abate [the risk].'" *Id.* at 855 (citations omitted). At the time of Plaintiff's incident, it was also well established that it is unreasonable for an official to do nothing when informed that an inmate is being threatened by other inmate gang members that have previously assaulted him. *See Id.* at 885 (citation omitted). Given the foregoing, I find that the Eighth Amendment right to be free from violence at the hands of other inmates was clearly established at the time of Plaintiff's incident. Therefore, Plaintiff has met his burden of demonstrating that qualified immunity is not appropriate in this case.

## V. CONCLUSION

Based upon the foregoing, it is **ORDERED AND ADJUDGED** that Defendant Officer Fletcher's Motion for Summary Judgment (DE 49) is **DENIED.**

**SIGNED** in Chambers at West Palm Beach, Florida this 3rd day of December, 2021.

Donald M. Middlebrooks
United States District Judge

cc:
Jonathan Ruiz, *Pro Se*
DC#K80087
Avon Park Correctional Institution
Inmate Mail/Parcels
8100 Highway 64 East
Avon Park, FL 33825

Christopher Kondziela, Ass't Att'y Gen.
Office of the Attorney General
110 S.E. 6th Street, 10th Floor (Civil)
Fort Lauderdale, FL 33301
Email: Christopher.Kondziela@myfloridalegal.com